Good morning, your honors. May it please the court. Jay Britton on behalf of the appellant, Rodney Gemar. Today I want to focus on two reasons why this court should reverse the district court. First, Mr. Gemar's proffer statements were improperly admitted and heard by the jury, and second, the district court failed to hold an evidentiary hearing when juror 27 was biased. First, the proffer waiver here is a rebuttal waiver, meaning specifically that the proffer statements to rebut any evidence or arguments offered on his behalf. The admission of a proffer statements first requires the rebuttal waiver to be triggered before the court considers whether to admit the rebuttal evidence. The statements at issue here are Mr. Gemar's proffer statement. He stated that he was driving along I-10 when Mr. Newman started throwing phones out the window randomly wherever the water began. Defense counsel's opening here stated that there was a possibility that the phones could be in a local precinct lost and found. So you're going this direction, just you accept it's an issue of contract interpretation, Mezzanato, Sylvester? Yes. And you're not arguing what I saw argued primarily below, which is there's always a safe harbor for openings, and you're not arguing that opening is somehow not argument. You're just arguing that it wasn't triggered, is that correct? Correct. So that's your argument, it's just the factual one. Yes. Even though, but the district court did have a hearing and parsed really carefully through what portions of the proffers could come in and which couldn't, correct? Yes, Your Honor. Okay. And we would disagree with the way that the court ruled and I'll go into that further. Is that an issue, that's an evidentiary question, an issue of clear order? I believe the district court's interpretation and the decision that the proffer waiver was triggered should be reviewed de novo. So defense counsel's opening here, again, it stated that there was a possibility that the phones could be in the lost and found. In Krillage, the Seventh Circuit held there must be a genuine inconsistency to trigger a proffer waiver and that statements are falsity of the other. Both of those statements can be true here. One does not rebut the other. And it's important to look at the context here. The district court's motion in Lemonet, this was litigated two years before the trial and the district court eventually ruled that defense was allowed to challenge the government's burden of proof. And here, the government presented their opening and said everything they were going to prove and defense stood up there and said, can you? Are you going to be able to show the phones? The purpose of defense counsel's opening argument was to challenge the government's burden of proof. That's a fine line, right? I mean, he proffered four times and it was very graphic description about driving down the road, they're tossing the phones into the bayou or the water. And then the defense attorney stands up and says to the jury, what this trial is going to show you is that those phones actually could have been lost and found. That's pretty contradictory. We would respectfully disagree, Your Honor. And again, it goes down to the context, the timing here. Defense counsel wasn't saying that the phones weren't thrown. He's asking what happened to the phones after. Did the government make an effort to search for them? Did they hire a dive team? Did they contact local law enforcement? And I'd like to read an excerpt from the district court's ruling on this. The court said, It seems to me the inference being made was the government failed to corroborate the physical evidence. And without that, how can we know the phones were thrown? And since we have no phones that have been produced, the inference would be that none were thrown. This is inference upon inference here. What is if they found sent divers down and found the phones that would corroborate two things. One, that there were phones, but it also would show that they were thrown into the water. So I don't see where that gets you. Well, they didn't search for the phones. And, you know, the case all supports the idea that he admitted that. And I thought they were tired until rely on that admission. He admitted that the phone later contradicted that he, Mr Gamer, did admit that the phones were thrown. But the government has to prove that case beyond a reasonable doubt without Mr Gamers proffer statements. Those proffer statements only come in if there's a genuine inconsistency if the waiver is triggered and it was not triggered here. Um, again, the inference that the district court made the first inference was that the government failed to corroborate the evidence. That's where they should have stopped, because that's exactly what defense counsel was doing. This was it is definitely difficult to try cases when you have multiple proffers, you admit to the crime, but then for whatever reason, a plea bargain doesn't come and you go to trial. I admit it's difficult, but the only solution I saw the defense offering was that they could promise anything no matter how contradictory of the proffers and the government's only response would be at closing to say, well, they didn't deliver on that. Well, the government here did provide what we believe is proper rebuttal evidence. They had a witness FBI agent Hargrave that testified why they didn't send divers down. That's proper rebuttal evidence here. Defense counsel was saying, you know, the government has to show you prove this beyond a reasonable doubt. The removal charge and they didn't, you know, they didn't try to find the phones. They didn't contact anyone or locate the phones and probably wasn't you. Probably the contract was in artfully written. You shouldn't agree that argument can trigger it. Well, argument is such a capacious term. Again, although argument can trigger it, it has to be contradictory argument here, and we don't believe that happened. In in Barrow, the Second Circuit did hold that an opening argument triggered a rebuttal waiver, but it's distinguishable for two reasons here. First, the argument in opening statement was directly contradictory. There were no inferences there. Specifically, the defendant had admitted to doing the crime and in defense is opening. The attorney specifically named another person as committing the crime, which both of those can cannot be true at the same time, unlike this case. And then additionally, in Barrow, Defense counsel elicited contradictory testimony from cross examination, and that court held that the cross cross examination reinforced the contradictory statement on opening. And we just don't have that here. We we have one line in a 17 page opening statement. That's entire purpose was to challenge the government's burden of proof. I don't mean to direct you, but I have quite a few questions about the juror's circumstance. Okay, you happy to move to that? Yes. The relief you're asking here, since you in oral argument, you've clarified you're not arguing actual or even applied bias. You're just saying reversible error for failure to have an evidentiary hearing. So the relief you want would be a limited remand for an evidentiary hearing. Um, no, Your Honor, we are saying that a new trial is necessary here because of the passage of time, the outside exposure. What's your biggest case when when the error might have been not to have inquired into credible evidence of juror misconduct? What's your best evidence that we wouldn't remand for that inquiry rather than vacate? What's your best case for that? Well, I think it's just the circumstances here. The facts here is that two years have passed and there's outside exposure that could have could affect the juror now. Um, yes, the juror should have been questioned, um, two years ago. And the fact that didn't the note a do you? Yes. But is that just factually wrong or we agree? That's factually wrong. A notice of hearing on record page 13 85 was filed with the motion for new trial, and there was a general discussion of the requirement that a hearing is necessary. And the, you know, the district court judge did not inquire or probe into this bias at all because I was thinking, of course, we don't know the facts, but but the allegation here is that someone that was very close to the your client's wife, um, for many years and had had a romantic involvement with her, um, somehow ends up on the jury does not acknowledge knows your client or the wife who's there at trial for seven days. So I would think the government would be as concerned as you in in that that could easily be a bias to favor the couple. And therefore, if there were to be a hearing, presumably the wife would be under oath. Yes. Yes. Yes. And we don't. We just don't know here. There could be resentment there. I don't think anyone would want. Did your new trial motion explain how this all suddenly came to light after a guilty verdict? 10 days later, it did not. But again, the district court has a duty to ensure that that the defendant gets an attendance rights that are being protected here. And the district court failed to probe into that. Um, it's the neutral motion didn't press the hearing request much. It's a sentence with one citation, correct? The notice for request for a hearing as opposed to actual or implied bias. The okay. But yes, the notice of hearing is construed as a request for a hearing here. And again, in Smith P Phillips, the remedy for allegations of juror partiality is a hearing where the defendant has an opportunity to prove actual bias. There was plenty of evidence of bias here, and the district court had a duty to probe into that bias. Well, I don't see much at all evidence of bias. What I see is, um, perhaps a fails to follow instructions and lies. When a court asks, Do you know any party here? We don't really know bias in any direction would be just as logical. That would have been biased in favor of his dear friend's wife, the wedding. Um, you're exactly right. We don't know here. There could be resentment again. I don't think that anyone would want their wife's former prom date sitting in judgment of them. There could be resentment, and we just don't know. And that's why there should have been a hearing here. But he saw every juror. Juror 27 was asked many questions. The defendant was right there staring at the person who came to his wedding. But he lied. He didn't disclose the relationship. Well, neither did the defendant. Well, the relationship is between the defendant's wife and the juror. Okay. I don't mean to argue with you, but is it correct that this fellow came to the wedding? Yes. In 2005, he went to Mr and Mrs Gaymer's wedding. The record is clear that the wife was at the trial for seven straight days. Is this are you suggesting she didn't recognize this fellow? Um, I'm the only thing I'm suggesting, Your Honor, is that we can't speculate to this. There should have been a hearing. Um, juror 27 in the two part test that McDonough lays out the circumstances here meet that test. First, the juror did not disclose his relationship with with Mrs Gaymer. He failed to answer a material question honestly. And if you would have answered correctly, it would have been a valid basis for a challenge for cause here. It was a non answer. It wasn't an affirmative. I don't know anyone here. Is that right? It was silence. Yes, but it was not indicate or the court reporter seemed to only indicate when someone, uh, made a positive response. And the there was the juror was asked twice about this specifically. Do you know Mr Gaymer's any any of his family or friends and then asked again? Are you sure there's nothing that we should you know that you think you need to disclose to the court again? Silence. He failed to. There were other jurors that disclosed relationships and came forward. He was on notice that he needed to disclose any relationships that he had. Uh, there was another juror, juror 34 that was dismissed for cause for an even more remote relationship. She knew the niece of a government witness there and was dismissed for cause. And that shows here that juror 27 would likely have been dismissed for cause here. And at the very, you know, because he was dishonest, the court couldn't determine his impartiality than in there. And then, secondly, the district court failed to hold a hearing on the motion for a new trial. The district court never got a chance to ask if this juror could be impartial. Um, you know, without this relate or with this relationship, and the district court has a duty to ensure that the defendant receives an impartial trial, impartial jury. We're also the juror was also impliedly bias here. There was, uh, an emotional, emotional relationship here. And again, that implied bias indicates that there needed to be a hearing for no more questions. I reserve the rest of my time. Mhm. Good morning. May it please the court. Dave Lieberman for the United States. No trial or sentencing error occurred in this case. We'd ask that the court affirm. I'd like to start off first with the claim regarding the admission of the proffer. The district court correctly admitted it. We do have some disagreement as to the legal framework as compared to the defense as to how this court should conduct its analysis. We think it's a two part, two prong test following the Barrow decision and heart in the Hardwick decision, the second and third circuit decisions that this court cited approvingly in Sylvester. Question number one, did defense counsel's opening trigger the waiver provision in the proffer? If the answer is yes, then the second question is, did, uh, Mr. Gamar, Gamar's proffer statement fairly rebut what, uh, counsel said in opening first question to Nova review question of contract law. Second question, evidentiary abuse of discretion. And I'd like to walk through if it's okay, the first step and the second step, because counsel brought them both up. First step, did the opening trigger the waiver provision in the proffer? The answer is yes. This is broad language. Uh, it authorizes admission of the proffer statement quote to rebut any evidence or argument offered on Mr. Gamar's behalf. This was as the district court recognized a factual argument, a factual assertion in opening about where these cell phones might be. Factual assertion under the plain terms of the proffer agreement, the waiver agreement is triggered. Was the proffer agreement just one encompassing all the proffers or is there a separate agreement for each proffer? I think it's just one agreement. And this would be a very different case if it just did said evidence instead of and argument. I would agree, Your Honor. That is correct. And you'll see, you'll see us in the case law. There are slight differences in proper language that courts have worked out over the years. And I'll use this as a, just as a point to distinguish the Krillich case in the Seventh Circuit. The proffer agreement at issue in the Krillich case of the Seventh Circuit brief, uh, review referred to if the defense presented a position inconsistent with the proffer. And that's why the Seventh Circuit's decision in that case was focusing quite a bit on what the meaning of inconsistency is. That's not the language that we used here. It was, uh, to rebut any evidence or arguments. So question of contract law, uh, de novo review, the district court correctly interpreted the proffer agreement and that counsel tripped it. Second question, did the proffers, Mr. Gaymer's proffer statement fairly rebut what counsel said at opening? And the answer I think is yes. And it's a, we think it's an abusive discretion review. And so the district court appropriately exercised its discretion in so holding. Counsel said, in effect, these cell phones, uh, may be sitting in a local police station. Gaymer, uh, Mr. Gaymer told us in the proffer that he watched a co-conspirator throw the cell phones out of the car into the lake, into the swamp. Those are, we can call, we can call them an inconsistency. We can say that the latter, uh, fairly rebuts, cast doubt on the counter as the former. Under any plain definition of rebut, this case is. Judge Malazzo allowed you to just use that little contradiction. Correct. Throughout the trial and in closing. Correct, Your Honor. And so, uh. Did the lost and found argument come up in the defense closing or did that disappear from the case? Uh, I believe, if I'm remembering it correctly, the defense counsel did try to offer an explanation for that, um, mentioned it briefly. Um, or not the lost and found, but mentioned or tried to explain the proffer statement. Yeah. Yeah. And so the, uh, the district judge did not let us, um, or did not interpret the proffer agreement to reach what she viewed as permissible legal arguments. The government did not meet its burden of proof. Uh, you jurors should have reason to question these witness, uh, credibility. The government, uh, did not conduct a trial. Those are the rules of the road that she, uh, outlined in her pretrial order ROA, um, 12, uh, 33. And, and so defense counsel's on notice that this was, these were the rules of the road and she quite, uh, reasonably exercised discretion in finding that the latter, the proffer agreement fairly rebutted the former. Now there might be, defense counsel might come up with some speculative explanation about to harmonize the two in front of the jury and the, uh, in the reply brief, the idea of, uh, the, the shrimpers finding the cell phones and turning the local police could have argued that to the jury. But the only question here for this court is whether the district court fairly determined that the proffer statement, I saw the co-conspirator throw the phones into the lake, fairly rebutted the opening, the phones may be sitting in a local police station on abusive discretion review. There's no basis for reversal. I would like to, um, before I turn to the juror bias question, just flag that the government has raised a harmless error argument, uh, that even if the juror, even if the jury had not heard the proffer statement, there were still overwhelming evidence implicating Mr. Gaymar in the charge criminal offenses. Uh, and I'll just highlight three, the, the cell location evidence, the evidence, uh, custodian records showing that Mr. Gaymar logged a gun in that had been seized a year earlier, uh, several years earlier, and the defense attorney's testimony about collecting cash from Mr. Gaymar in a restaurant parking lot, um, several days after they, uh, collected it all from the rescue wallets. So unless there are any more questions on the proffer issue, I'll turn to the, uh, juror bias issue. I'll start broad and then go to the evidentiary, uh, hearing question that counsel spent, um, the most of her presentation on, on the broader issues, no implied bias. This juror does not fit into any of the strict categories that this court has recognized where bias is implied as a matter of law and on the record that it currently exists, there's no evidence or insufficient evidence of actual bias, uh, old high school friendship. Uh, that's what we have with, with a recent Facebook exchanges. Um, this court, other courts have said friendship, um, in and of itself does not equal actual bias. Let me go to the evidentiary, uh, hearing question, which occupied, uh, quite a bit of, um, the prior, prior presentation. We don't read, um, Mr. Gaymar's new trial motion is asking for an evidentiary hearing. This is at ROA 1371 through 1384. Uh, there's a reference to this hearing, uh, standard for an evidentiary hearing, and there's a discussion in one or two cases, one or two cases, the motion referenced that evidentiary hearing was held. It seems to preserve it. And then the district court in her order says normally one should, and I did not see you in your standard review say this is reviewed for plain air. So no, we have not asserted. So that sounds like that combination alone is the issue was preserved. The district court addressed it. Gaymar cited it. It's a sentence supported by legal authority. And then she delves into it and says why she's not going to it with a footnote. I'm sorry, Mr. So we, maybe I'm so I may have misspoke. We do not, we view the overriding juror bias claim as preserved, but we did say that there was no request made in our brief for an evidentiary hearing. And so the district court did not abuse this. I thought her, her brief to us was structured three ways, actual bias, otherwise implied bias, otherwise reverse for hearing. You respond to all three. You never say any portion is reviewed only for plain air. Yeah, I think, I think that's correct here. And I think the proper way to review our response would be, we said Mr. Gaymar's motion for new trial didn't request an evidentiary hearing. And so by necessity, the district court did not abuse its discretion in failing. But then it does request it. It's just, you're saying it's too minimal. And yet it was sufficient for the district court to discuss it and even drop a foot note with legal authority. So I don't view that foot. I view the footnote as the district court stating her understanding that no hearing was requested. Citing a case which in turn you don't urge to us, correct? So that's correct. She cited Bay, but we also cited Thomas and Buckner for the proposition that district courts are under no obligation to order a hearing every time a juror bias allegation is raised. But, but unless I'm wrong, you correct me, Buckner's another habeas case. Buckner is a habeas case. Uh, Thomas, I believe is a, that's an abuse of discretion. In Thomas, it's a single line with no supporting authority. So what I would have thought is that Supreme court law, Remmer and Phillips are pretty clear whenever there's any significant doubt about juror impartiality, which is a grave obstruction of the situation. A juror on a jury who actually knows one of the two, whenever there's that. And here, additionally, a juror lies to a court during voir dire. I would think that it would always be an abuse not to have a hearing. And if, if anything, if we had to speculate, it would be that this juror and the defendant were aligned and it would be the government that would want to know for sure in an evidentiary hearing what happened here. So your honor, we would certainly, the government would certainly explore that if this court ordered an evidentiary hearing, we would also explore why this claim was raised so far after trial. Um, uh, Mr. Gitmar and his wife were in the court with the juror throughout trial, yet this claim emerges well later, um, without the evidence. You'd be open to a limited remand? Is that? No, I just want to, we don't think that the district court abused discretion chiefly because a number of the things that we're talking about that may have been above just a friendship, was there a romantic interest or feelings? None of that was fleshed out at all in the new trial motion. It's in the opening brief, I think at page 21. You call it tenuous. And yet the affidavit from the wife is that they'd had constant social media contacts since they were in a ring dance together. That doesn't sound that tenuous. That's under oath. This, this is a fairly close friend who goes to their wedding. So the government's position is close high school friendship in the, in the late nineties going to the wedding and then a happy birthday messages on Facebook between 2009 and 2017 that establishes. And that stops when her husband's indicted. Your Honor, our position is this shows at a minimum, this shows at most, excuse me, the type of friendship that is not rise to the level of actual bias and, and that it was not, the district court did not abuse its discretion in failing to conduct an evidentiary hearing. It's difficult. I guess my concern and you help me here, it there is pretty strong salutary law, Supreme Court law saying when you have doubt about juror impartiality, especially a juror that might be lying to a judge, it's, it's very good and healthy precedent to say you've got to investigate. And, and the contrary authority that judge Malazzo gives is this Bay decision, which it seems quite distinguishable and you aren't pressing it. Your best authority. Those two cases are pretty thin too from Mott, but push back on me. So I just don't know how we write it without undercutting a very important portion of court sanctity. Yes, Your Honor. I, I, I still think this is a, a combination of several factors that again, even if the motion for new trial, if you agree it's preserved, it was preserved. The request for an evidentiary hearing was very cursory, did not flesh out any of the considerations about anything above a friendship that we are talking about now. So given the record that was presented before the district court, we don't see an abuse of discretion. But if you disagree with me, the, we think the only possible remedy would be a limited remand for that type of evidentiary hearing. There's no support for opposing counsel's request that this, we, we have a, we do an entire do over of the trial. And just to be clear, I agree with you on friendship. My worry is more a lie to a federal judge. When a judge says, do you know either party and any juror? Cause we have the sworn affidavit saying that they actually did know each other quite well. And that juror doesn't answer. Understood. Your Honor. I don't have anything more on the motion, on the evidentiary hearing question. I understand the court's position or the court's concerns. Well, no, no, no. It's difficult issues. Helpful to hear your answers. Yes. There are, were a couple other issues raised in this case both as to the broader juror bias issue. And then there's a loss issue on sentencing. I'm happy to rest on my briefs and give back my time unless the court has any questions about the record or the legal arguments in this case. The government asks that the court affirm. Thank you. I just want to pick up where the government left off that defense counsel here absolutely requested a hearing. There was a notice of hearing. It was clear that they desired a hearing on the motion for new trial notice of here. What do you mean by that? I may have missed that. There was a separate, not only the new trial rule 33 emotion. There was a separate notice for hearing. Yes, your Honor. There was a separate notice for hearing attached to the motion at our way. Um, our way 1385. And can you read the sentence with supporting legal authority in the new trial motion that actually is specific to, we need to have a hearing. Do you have it right in front of you? Um, what the actual notice said? No, not the notice. The, the rule 33 argument. I do not have rules. That's all right. I'm sorry, your Honor. Okay. So if we are reviewing for abuse of discretion, not plain error, it sounds like the government's pointing out that it was very thinly requested, but they aren't standing on plain error. Um, why aren't they right? No abuse. Judge Malazzo presided over the whole thing. She had firsthand observations about juror 27. Um, the motion for new trial doesn't explain how this came to anybody's attention. But that's, you're exactly right, your Honor. We don't know. We can't speculate. We can't infer what you do know. Your client knows how this came to his attention. Miss his, it's his wife here. Here. Um, and again, we, we didn't have a hearing where we weren't able to develop her testimony when she, you say it's his wife. I'm sorry. It's in her affidavit. Does she say, well, I sat and stared at this guy all trial, but we sort of hope the jury would acquit my husband. And so then we only brought it up as a, we have this sort of in reserve 10 days later after he's guilty. Then I described to everyone that actually we knew he was there the whole time. It was, it was an affidavit that authenticated. The evidence presented with it and it demonstrated her willingness to testify at a hearing. I don't believe it's that detailed because they thought they were going to have a hearing here, which was necessary. We could have found out, you know, just everything. We could have found out the bias. And again, the district court was sitting, the district court judge was sitting over, um, the juror, you know, testing their credibility, but they, they didn't ask. My skepticism, the attachments show that she knew juror 27 very well. That's the whole purpose of the attachments. And yet the record shows she sat in that trial for seven days. Yes, Your Honor. There's no obligation. She hasn't forfeited or he hasn't by virtue of not bringing up before her husband gets in the guilty verdict. She doesn't have to bring it up contemporaneous with her observation. I can't, um, Your Honor, I can't speculate to why she didn't bring it up sooner, but it's Mr. Gamar here that has a six amendment right to an impartial jury and juror 27, you know, lied. He didn't disclose his relationship and the district court didn't have an opportunity to ask him any questions about this relationship. So at the very least we would request an evidentiary hearing, you know, so that the district court may probe into this bias. And then I see him running out of time, but I like to point out two cases on the proffer issue. Um, Chadwick from the third circuit and Reb from the ninth circuit, both have proffer waivers, exactly the same here, evidence or argument. And in both of those cases, there were multiple inconsistencies, um, developed through, uh, multiple witnesses testimony. And it was, you know, all of those inconsistencies that amounted to a contradictory argument. Um, again, here, there's just one line. There's not a genuine inconsistency. And then I'd also like to address the harmless error. The error was not harmless here. Um, it directly contributed to his conviction. Mr. His co-defendant, Mr. Scott was acquitted of this charge. And the main difference there was that the proffer statements were admitted against Mr. Gamar and not Mr. The government argued the proffer statements as affirmative proof of guilt or just to impeach. In the, in the, as affirmative, uh, proof. Yes. In, um, the government's closing statement, when they move on to the removal charge, uh, in regards to Mr. Gamar, they say, well, what proof do we have? We have his proffer statement. He admitted to it. So yes, they were absolutely using this as affirmative proof that he committed the charge. And the other, the other evidence here is not overwhelming. The cell records they have are toll records. They did not pinpoint an exact location where he was. Um, and then again, Mr. Newman's testimony was impeached here. Um, he lied. He admitted that he lied on the stand and there just isn't enough, um, to show that the government proved Mr. Gamar's removal charge beyond a reasonable doubt. Thank you. Thank you. Council.